**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § § § | CRIMINAL NO. H-19-047 |
| PEDRO PALACIOS GUEVARA | § | |

**MEMORANDUM AND OPINION**

Pedro Palacios Guevara has moved to dismiss the indictment charging him with violating 8 U.S.C. § 1326 by illegal reentry after a prior deportation. He argues that the indictment is based on a 2008 removal order from an Immigration Court that lacked subject-matter jurisdiction. (Docket Entry No. 17). Guevara was removed based on that order, but was later found and charged under 8 U.S.C. § 1326 with illegal reentry. Guevara argues that because the Immigration Court ordered him removed without jurisdiction in 2008, the removal was invalid. (*Id.* at 1). Alternatively, he argues that the original removal order violated his due process rights and 8 U.S.C. § 1326(d), and that the government cannot prove illegal reentry without an original valid removal. (*Id.*).

Guevara is one of many defendants making these arguments following the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), based on the Notices to Appear used to set their hearings on removal. The issue is a Notice to Appear that does not state the date and time of the hearing. Three circuit courts have addressed the issue and found no jurisdictional defect or due process violation when such a Notice to Appear leads to removal. *See Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019); *Hernandez-Perez v. Whitaker*, 911 F.3d 305 (6th Cir. 2018); *Santos-*

*Santos v. Barr*, No. 18-3515, 2019 WL 961560 (6th Cir. Feb. 28, 2019); *Leonard v. Whitaker*, 746 F. App'x 269 (4th Cir. 2018) (per curiam). District courts have reached conflicting results.[1]

## I.     Procedural History

Guevara is charged with illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a) and (b)(1). (*See* Docket Entry No. 10). The government alleges that Guevara illegally entered the United States sometime before August 2007, when he was arrested in Harris County, Texas for driving while intoxicated. (Docket Entry No. 18-2). He was released from the custody of the Texas Department of Corrections in June 2008, into the custody of U.S. Immigration and Customs Enforcement. (Docket Entry No. 18 at 2). The government began removal proceedings

---

[1] Some district courts have dismissed the indictment without a § 1326(d) analysis based on a conclusion that a statutorily deficient Notice to Appear does not vest an immigration judge with jurisdiction. *See e.g.*, *United States v. Santiago Tzul*, No. 4:18-CR-521-KPE, 2018 WL 6613348 (S.D. Tex. Dec. 4, 2018), *notice of appeal filed*, 18-20802 (Dec. 6, 2018); *United States v. Alfredo-Valladares*, No. 1:17-CR-156-SS, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), *notice of appeal filed*, 18-50953 (Nov. 1, 2018); *United States v. Pedroza-Rocha*, No. 3:18-CR-1286-DB, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018), *notice of appeal filed*, 18-50828 (Oct. 2, 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018). Some district courts have concluded that although a statutorily deficient Notice to Appear does not vest an immigration judge with jurisdiction, the defendants must nonetheless satisfy the requirements of § 1326(d). *See e.g.*, *United States v. Rangel-Rodriguez*, No. 18-CR-581, 2019 WL 556725 (N.D. Ill. Feb. 12, 2019) ("[E]ven assuming that the 2010 was defective, [the defendant] must satisfy the requirements of section 1326(d) to collaterally attack the underlying removal order."); *United States v. Francisco Hernandez-Lopez*, No. 5:18-CR-625(1)-DAE, 2018 WL 6313292 (W.D. Tex. Dec. 3, 2018) (assuming jurisdiction without deciding and holding that the defendant was not entitled to relief under § 1326(d)); *United States v. Gerardo Sandoval-Cordero*, No. 3:18-CR-2370-KC, 342 F. Supp. 3d 722, 2018 WL 6253251 (W.D. Tex. Nov. 29, 2018) (defendant did not satisfy § 1326(d)); *United States v. Margarito Zapata-Cortinas*, No. 5:18-CR-343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018) (same); *United States v. Lopez-Urgel*, No. 1.18-CR-310-RP, 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018), *notice of appeal filed*, 18-50970 (Nov. 15, 2018) (defendant satisfied § 1326(d)). Other district courts have concluded that a statutorily deficient Notice to Appear does not affect an Immigration Court's jurisdiction and that a defendant must satisfy § 1326(d). *See e.g.*, *United States v. Hernandez-Aguilar*, No. 5:18-CR-137-FL-1, 2019 WL 456172 (E.D.N.C. Feb. 5, 2019) (defendant did not satisfy § 1326(d)); *United States v. Torres-Castelan*, No. 1:18-CR-354-LY, 2019 WL 361684 (W.D. Tex. Jan. 29, 2019); *United States v. Saravia-Chavez*, No. 3:18-CR-16-NKM, 2018 WL 5974302 (W.D. Va. Nov. 14, 2018) (defendant did not satisfy § 1326(d)); *United States v. Ramos-Delcid*, No. 3.18-CR-20-NKM, 2018 WL 5833081 (W.D. Va. Nov. 7, 2018), *notice of appeal filed*, 18-4859 (Nov. 28, 2018) (defendant who was removed in abstentia satisfied § 1326(d)).

against him through the issuance of a Notice to Appear on June 23, 2008. (Docket Entry No. 17-2). The Notice did not specify when the court would hold his hearing. (*See id.* (stating that Guevara was to appear "on a date to be set" and "at a time to be set")). Guevara attended his hearing, and, on June 30, 2008, the Immigration Judge ordered Guevara deported. Guevara was removed on July 1, 2008. (*See* Docket Entry No. 18-2 at 7–9). Guevara reentered the United States in 2014, his order of deportation was reinstated, and he was deported again that year. (*Id.* at 10–15). He reentered the United States again after the 2014 deportation and was arrested in 2018 for driving while intoxicated. (*See id.* at 17–21).

## II. Guevara's Challenge to Subject-Matter Jurisdiction

Guevara argues that the Immigration Court lacked subject-matter jurisdiction to issue the 2009 removal order, making the order invalid. Without a valid removal order, he argues, the government cannot prove a necessary element of its reentry charge against him. (Docket Entry No. 17 at 3). Guevara argues that because the 2008 Notice to Appear did not state a date or time for his removal hearing, it was not a valid charging document under federal law. (*Id.*).

Under 8 U.S.C. § 1229a, Immigration Judges have the authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). These proceedings are "the sole and exclusive" means of "determining whether an alien may be . . . removed from the United States." § 1229a(a)(3). Immigration Courts have limited jurisdiction. "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). Charging documents for proceedings after April 1, 1997, are to "include a Notice to Appear, a Notice of Referral to

3

Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13.

Guevara argues that a valid Notice to Appear is a prerequisite to the commencement of a removal proceeding, making the lack of a valid Notice to Appear a bar to an Immigration Court's legally issuing a removal order. When an Immigration Court exceeds its delegated power, orders it issues are "a legal nullity." (Docket Entry No. 17 at 5 (citing *James v. Gonzales*, 464 F.3d 505, 513 (5th Cir. 2006))). Guevara argues that the Notice to Appear issued on in 2008, "was deficient because it had no information regarding the time and date of his hearing," making it an invalid Notice to Appear, depriving the Immigration Court of jurisdiction, and barring his removal proceedings from "commencing" under 8 C.F.R. § 1003.14(a). (*Id.* at 6).

These arguments are largely based on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), in which the Supreme Court held that a valid Notice to Appear under 8 U.S.C. § 1229(a) must include the time and place of a hearing for the "stop-time rule" to operate. *Id.* at 2118 ("[T]he statute makes clear that Congress fully intended to attach substantive significance to the requirement that noncitizens be given notice of at least the time and place of their removal proceedings. A document that fails to include such information is not a 'notice to appear under section 1229(a)' and thus does not trigger the stop-time rule."). The stop-time rule applies in a context different from the present case. Under § 1229b(b)(1)(A), a nonpermanent resident may seek cancellation of removal after 10 years of physical presence in the United States. Once a valid Notice to Appear is served on a nonpermanent resident, that period ends, and further presence in this country does not extend the nopermanent resident's time to seek cancellation of removal. § 1229b(d)(1)(A).

*Pereira* involved a nonpermanent resident who was served a § 1229(a) Notice that did not include the time and date of the hearing. When he later sought to cancel his removal under § 1229b, his request was denied because he had been served with the § 1229(a) notice. *Id.* at 2112. The Supreme Court held that the denial was improper because the Notice did not include the "time and place at which the [removal] proceedings will be held," § 1299(a)(1)(G)(I), and did not trigger the stop-time rule. The Court explained that "neighboring statutory provision[s]" suggested that the Notice to Appear must include the time and location of the removal proceedings to trigger the stop-time rule. The Court noted that the second paragraph of § 1229 states that "in the case of any change or postponement in the time and place of [removal] proceedings," the government must give the noncitizen "written notice" on the new time or location of the hearing," which the Court took to "presume[] that the Government has already served a 'notice to appear under section 1229(a)' that specified a time and place." *Pereira*, 138 S. Ct. at 2114. The Court also noted that "Section 1229(b)(1) gives a noncitizen 'the opportunity to secure counsel before the first [removal] hearing date' by mandating that such 'hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear.'" *Id.* Without the date and location, a "putative notice to appear . . . is not a 'notice to appear under section 1229(a)(a).'" *Id.* at 2113–14 (quoting 8 U.S.C. § 1229b(d)(1)(A)).

The government argues that the language in 8 C.F.R. § 1003.14 about when "jurisdiction vests" does not change the statutory jurisdictional requirements for Immigration Courts, but instead "create[s] a nonjurisdictional procedural rule." (Docket Entry No. 18 at 6). The government argues that a deficient Notice to Appear may impact the merits of a case, but it does not determine subject-matter jurisdiction, pointing to Supreme Court cases holding, in non-immigration contexts,

5

"that defects in a charging document do not deprive a court of subject[-]matter jurisdiction." (*Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630-31 (2002); *United States v. Williams*, 341 U.S. 58, 66 (1951); *Lamar v. United States*, 240 U.S. 60, 64–65 (1916))).

The government also challenges Guevara's reading of *Pereira*. According to the government, the Court's narrow holding in *Pereira* did not alter the longstanding rule that a charging document does not determine jurisdiction. (*Id.* at 7). The government argues that the issue central to *Pereira* was how to read the stop-time rule, 8 U.S.C. § 1229b(d)(1)(A), in conjunction with § 1229(a), which establishes the requirements for Notices to Appear. (*Id.* at 8). "The Court's decision turned on the statute's explicit reference to the [Immigration and Nationality Act]'s definition of what constitutes a 'Notice to Appear,'" and did not discuss the effect of the [Immigration and Nationality Act]-defined Notice might have in other contexts." (*Id.* at 9).

Guevara is correct that § 1229(a) requires a Notice to Appear to specify the time and place of the removal proceeding. As some district courts have recognized, "[t]his reading is strengthened, yet not controlled in the Section 1326 context, by the Court's holding in *Pereira*" because § 1229(a) is unambiguous and does not give the Immigration Court discretion to decided whether to include the hearing's time and place in the Notice to Appear. *United States v. Chavez-Flores*, No. EP-18-CR-03229-FM, 2019 WL 453616, at *3 (W.D. Tex. Feb. 4, 2019). This leaves the question of whether a Notice lacking this information means that the Immigration Court lacks subject-matter jurisdiction to issue a removal order.

The government argues that 8 C.F.R. § 1003.14 "appear[s] to create a nonjurisdictional procedural rule, not a limit on the Immigration Court's power to conduct removal proceedings." (Docket Entry No. 18 at 6). The Fourth, Sixth, and Ninth Circuits have all recently held that *Pereira*

6

does not apply to cases in which, as here, a defendant challenges the Immigration Court's subject-matter jurisdiction over his removal proceeding on the ground that the Notice to Appear did not state the hearing date and time. *See Karingithi*, 913 F.3d at 1161 ("In short, *Pereira* simply has no application here. The Court never references 8 C.F.R. §§ 1003.13, 1003.14, or 1003.15, nor does the word 'jurisdiction' appear in the majority opinion."); *Hernandez-Perez*, 911 F.3d at 310–15 ("We therefore conclude that jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing, *see* 8 U.S.C. § 1229(a), is provided in a Notice of Hearing issued after the NTA," *id.* at 314–15); *Leonard*, 746 F. App'x at 269.

A number of district courts have rejected arguments similar to those Guevara presents. *See, e.g.*, *United States v. Torres-Castelan*, No. 1:18-CR-354-LY, 2019 WL 361684, at *5 (W.D. Tex. Jan. 29, 2019) (because § 1229 does not reference jurisdiction, "notice to appear is not of jurisdictional consequence"). While a number of district courts had reached a different result, the circuit court decisions have relied primarily on the Board of Immigration Appeals's recent precedential opinion that rejected an argument nearly identical to the one Guevara makes. In *Matter of German Bermudez-Cota*, 27 I. & N. Dec. 441 (B.I.A. Aug. 31, 2018), the Board rejected the argument that *Pereria* applied to determine an Immigration Court's jurisdiction when "the respondent is not seeking cancellation of removal, and the stop-time rule is not at issue." *Id.* at 443. The Board explained that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a notice of hearing specifying this information is later sent to the alien." *Id.* at 447. The Ninth and Sixth Circuits have emphasized that because an agency's interpretation of its own regulations is due "substantial deference" and is "controlling unless plainly erroneous or inconsistent

with the regulation," the Board's decision in *Bermudez-Cota* guides the interpretation of 8 C.F.R. § 1003.14. *See Auer v. Robbins*, 519 U.S. 452, 462 (1997); *see Karingithi*, 913 F.3d at 1161; *Hernandez-Perez*, 911 F.3d at 312.

Section 1229(a)(1) does not "explain when or how jurisdiction vests with the immigration judge—or, more specifically, denote which of the several requirements for [Notices to Appear] listed in § 1229(a)(1) are jurisdictional." *Hernandez-Perez*, 911 F.3d at 313. The regulations state that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court," but the language listing the information necessary in a Notice to Appear does not require the time and date of the hearing be included. 8 C.F.R. §§ 1003.14(a), 1003.15. These regulations do not refer to § 1229(a), in contrast to *Pereira*, in which the stop-time rule at issue in § 1229(b)(1)(A) cross-referenced § 1229(a). *Pereira*, 138 S. Ct. at 2114.

Because the statute and regulations are ambiguous, the court defers to the agency's interpretation. *Pereira* does not show that the Board's interpretation is plainly erroneous. As the Sixth Circuit noted, "*Pereira*'s emphatically 'narrow framing' counsels in favor of distinguishing between" deficient Notices to Appear in the stop-time context and those related to questions of an Immigration Court's subject-matter jurisdiction. *Hernandez-Perez*, 911 F.3d at 314. The Fifth Circuit has also suggested that *Pereira* should be read narrowly, explaining in a footnote of its opinion upholding the Board of Immigration Appeals's decision to dismiss a petitioner's appeal of his motion to reopen removal proceedings that *Pereira*'s "narrow question was whether a NTA that does not specify the time or place of removal hearing triggers the 'stop-time rule' for purposes of a cancellation of removal." *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018).

8

The more recent district court decisions on the issue are also in the direction of rejecting *Pereira*-based challenges similar to Guevara's. *See, e.g.*, *United States v. Gaeta-Galvez*, No. 18-CR-134-JPS-JPS, 2019 WL 989766, at *6 (E.D. Wis. Mar. 1, 2019) (denying motion to dismiss indictment based on the Notice to Appear's failure to include the hearing date and time); *United States v. Ramirez-Cruz*, No. 2:18-CR-206-FtM-38MRM, 2019 WL 952313, at *2 (M.D. Fla. Feb. 27, 2019) (same); *United States v. Gonzalez-Ferretiz*, No. 3:18-CR-117, 2019 WL 943388, at *6 (E.D. Va. Feb. 26, 2019) (same); *United States v. Calderon-Avalos*, No. EP-18-CR-3156-PRM, 2019 WL 919210, at *18 (W.D. Tex. Feb. 25, 2019) (same); *see also Lucas v. Nielson*, No. 18-CV-07763-HSG, 2019 WL 88402, at *4 (N.D. Cal. Feb. 22, 2019) (denying for motion for preliminary injunction and petition for writ of habeas corpus in part because the petitioner's original argument was precluded by Ninth Circuit's conclusion a Notice to Appear's failure to include the date and time does not deprive an Immigration Court of jurisdiction).

The law and the record fail to support the motion to dismiss.

### III. Guevara's Related Due-Process Challenges

In the alternative, Guevara argues that the court should dismiss the indictment "[b]ecause the immigration court lacked jurisdiction to enter a removal order," which made "the prior removal proceedings . . . fundamentally unfair," in violation of Guevara's due-process rights. (Docket Entry No. 17 at 12). Because, Guevara argues, "the ostensible charging document filed in [his] removal proceedings was not a valid NTA under § 1229(a)(1)(G) and *Pereira*," the Immigration Court's "jurisdiction did not vest and removal proceedings did not commence under 8 C.F.R. § 1003.14(a)." (*Id.* at 13). Guevara contends that "[e]xhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile . . . or where the administrative proceedings

9

themselves are void." (*Id.* at 14 (quoting *United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Empl. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982)). He points to district courts holding that "the defendant 'need not show that he exhausted administrative remedies because th e immigration court proceedings were void,'" (*id.* (quoting *Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (W.D. Tex. July 26, 2018))), and arguing that he suffered actual prejudice because he "was ordered removed when the court had no authority to issue such an order." (*Id.* at 15).

The government argues that Guevara's due-process argument is an invalid collateral attack on his prior removal order under 8 U.S.C. § 1326(d), which states:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in section (a)(1) or subsection (b) unless the alien demonstrates that:
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

The government argues that Guevara's failure to exhaust his administrative remedies is not excused or inapplicable in this context, characterizing the case Guevara cites as "an outlier among the district court decisions addressing similar motions to dismiss, [that] was erroneously decided." (Docket Entry No. 18 at 15–16). The government urges this court to follow other district courts denying similar defense motions to dismiss indictments because the defendants did not challenge the removal order or appeal from it at the time of the removal. (*Id.* at 16–17 (citing *Lira-Ramirez*, 2018 5013523, at *5; *Munoz-Alvarado*, 2018 WL 4762134, at *1)). The government highlights *De*

*La Paz-Zaragoza v. Sessions*, No. 18-3221, 2018 U.S. App. LEXIS 28780 (6th Cir. Oct. 11, 2018) (order), in which the Sixth Circuit rejected the defendant's interpretation of *Pereira* as requiring a proper notice to appear for an Immigration Court to have jurisdiction and instead emphasized the noncitizens need to exhaust administrative remedies. The government argues that exempting Guevara from the exhaustion requirement "because the immigration court proceeding was void [would] collapse[] the first and third prongs of § 1326(d)." (*Id.* at 17–18).

The government also argues that Guevara has and cannot show that the 2008 removal proceedings were unfair or otherwise violated due process. (*Id.* at 19). Guevara received and signed the Notice to Appear, "attended the June 2008 hearing," and "had the opportunity to appeal the removal order that resulted from that hearing," although there is no indication that he tried to appeal. (*Id.* at 19). The government contends that Guevara's actions waived any administrative remedies. (*Id.*).

Finally, the government argues that the 2008 removal proceeding was fundamentally fair because there was no actual prejudice to Guevara. (*Id.*). Guevara "participated in his hearing, curing any potential deficiency and removing the potential for prejudice," even if the Notice to Appear had included the hearing's date and time, "it is a near certainty that the proceedings would have taken place in the same manner, at the same time, and with the same result." (*Id.* at 20–21). Guevara cannot show, the government contends, that a Notice to Appear with the date and time would have changed the outcome of the 2008 removal hearing, or would have otherwise prejudiced Guevara, emphasizing that he did not miss his hearing. (*Id.*).

The primary basis for Guevara's argument that the Immigration Court's removal order violated his due process rights is that it lacked jurisdiction to issue that order. The lack of date or

11

time in the Notice to Appear did not deprive the Immigration Court of subject-matter jurisdiction. Guevara's related arguments that his due process rights were violated, or that fundamental unfairness prejudiced him, fail.

**VI.     Conclusion**

The Fifth Circuit may soon squarely address the argument that the failure to include the date and time in a Notice to Appear deprives an Immigration Court of subject-matter jurisdiction. But based on the Supreme Court's decision in *Pereira*, the statutory and regulatory language, recent circuit court decisions, and the record of Guevara's proceedings, the court follows the three circuit courts that have already directly decided the issue and denies the motion to dismiss the indictment. (Docket Entry No. 17).

SIGNED on March 18, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge